IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RACHEL LEPLEY,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF<br>SOCIAL SECURITY,<br><br>    Defendant. | CASE NO. 5:24-CV-01818-SL<br><br>JUDGE SARA LIOI<br>UNITED STATES DISTRICT JUDGE<br><br>MAGISTRATE JUDGE<br>JENNIFER DOWDELL<br>ARMSTRONG<br><br>**REPORT AND RECOMMENDATION** |

**I.  INTRODUCTION**

Plaintiff Rachel Lepley ("Ms. Lepley") seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). (*See* ECF non-document entry dated October 18, 2024). For the reasons set forth below, I RECOMMEND that the Court AFFIRM the Commissioner's decision.

**II.  PROCEDURAL HISTORY**

On May 2, 2022, Ms. Lepley filed her applications for DIB and SSI. (Tr. 561, 568). Ms. Lepley's applications related to her brain aneurism, seizure disorder, mitral valve prolapse, asthma, calcium pyrophosphate deposition, chondromalacia patella, shoulder issues, Crohn's disease, periodic limb movement disorder, depression, anxiety, tremors, and bipolar II disorder. (Tr. 587).

The Social Security Administration ("SSA") denied Ms. Lepley's applications initially and

upon reconsideration. (Tr. 433-34, 444-45). Ms. Lepley requested a hearing before an administrative law judge ("ALJ"). (Tr. 489). The ALJ held a hearing on August 16, 2023, at which Ms. Lepley was represented by counsel. (Tr. 376). Ms. Lepley testified, as did an impartial vocational expert ("VE"). On September 13, 2023, the ALJ issued a written decision, finding that Ms. Lepley was not disabled. (Tr. 353). The ALJ's decision became final on August 23, 2024, when the Appeals Council declined further review. (Tr. 2).

On October 18, 2024, Ms. Lepley filed her complaint, challenging the Commissioner's final decision. (ECF No. 1). Ms. Lepley asserts the following assignment of error:

(1) The ALJ's RFC finding is inconsistent with the medical evidence in the record, which supports the Plaintiff's need to alternate positions and difficulty sitting for prolonged periods.

(ECF No. 10, PageID # 1432).

### III. BACKGROUND

#### A. Personal, Educational, and Vocational Experience

Ms. Lepley was born in 1982 and was 39 years old on the alleged onset date. (Tr. 368, 384). She is divorced and has three children. (Tr. 385, 562). Ms. Lepley has a high school diploma and attended some college. (Tr. 386, 588). She has prior work as a home health aide, belter and stamper, cashier, assistant retail manager, security guard, and corrections officer. (Tr. 387-95).

#### B. Relevant Hearing Testimony

##### 1. Ms. Lepley's Testimony

Ms. Lepley testified that her knees are very poor. (Tr. 397). When she bends down, her knees pop, crack, and sometimes lock in place. *Id*. Ms. Lepley testified that her right knee is worse than her left. (Tr. 398). She also testified that her knees swell every day, and that she is limited in the medications she can take because of a prior gastric bypass surgery. (Tr. 399). Ms. Lepley further testified that she uses compression garments, elevates her legs, and uses ice to address the swelling, but that those treatments do not help. *Id*. She also testified that she had had three previous

2

arthroscopic knee surgeries on her right knee and that she is now looking at a total knee replacement for that knee. (Tr. 397).

Ms. Lepley testified that she deals with pain throughout the day. (Tr. 398). She also testified that she cannot stand for more than 15 minutes before she needs to sit down and that she can walk approximately one block before she needs to stop. *Id*. She further testified that she can only sit for ten minutes before she needs to adjust positions. (Tr. 399). She does not use a cane or a walker, but she does use a chair in the shower. *Id*. Ms. Lepley testified that she spends most of the day with her legs elevated and rarely leaves the house. (Tr. 400).

### 2. *Vocational Expert's Testimony*

The ALJ asked the VE to consider a hypothetical individual with Ms. Lepley's age, educational background, and work experience who could perform the full range of sedentary work but could frequently reach in all directions, handle, or finger; occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; frequently balance or stoop; occasionally kneel, crouch, or crawl; never be exposed to unprotected heights or hazardous machinery; must avoid concentrated exposure to humidity, extreme cold and heat, dust, odors, fumes, or other pulmonary irritants; was limited to simple, routine tasks and work-related decisions; could frequently interact with supervisors, coworkers, or the general public; and could tolerate few changes in a routine work setting. (Tr. 419-20). The VE testified that the hypothetical individual could not perform Ms. Lepley's past relevant work but could perform jobs existing in significant numbers in the national economy, including work as an order clerk, weight tester, and charge account clerk. (Tr. 420).

The ALJ next asked if the hypothetical individual could perform work if the individual were limited to occasional reaching, handling, or fingering. *Id*. The VE testified that limitation would be work-preclusive. *Id*. The VE also testified that it would be work-preclusive if the hypothetical individual would be off task 20 percent of the time and would be absent from work

three days per month. (Tr. 420-21).

In response to a question from Ms. Lepley's counsel, the VE testified that it would be work-preclusive if the individual needed to alternate from sitting to standing every 15 minutes. (Tr. 421). The VE also testified that it would be work-preclusive if the individual required additional supervisory support and extra time to learn a new task. (Tr. 421-22).

### C. Relevant Opinion Evidence

#### 1. *Mustafa Mahmood, M.D.*

On August 27, 2022, Dr. Mahmood examined Ms. Lepley in connection with her disability claim. (Tr. 1133). Dr. Mahmood found no joint swelling, effusion, tenderness, or deformity of Ms. Lepley's joints. (Tr. 1136). He noted that she reported occasional tenderness and difficulty in both knees but stated that tenderness was not present at her examination. *Id*. She was able to rise from a seated position without assistance, walk on heels and toes, and stand on one foot without difficulty. *Id*. She also had full range of motion and a normal gait. (Tr. 1136, 1139). Dr. Mahmood stated that Ms. Lepley had no significant abnormalities other than occasional knee pain and opined that she had no significant physical limitations. (Tr. 1136-37).

The ALJ found that Dr. Mahmood's opinion was not persuasive because the overall record supported some degree of limitation regarding Ms. Lepley's physical functioning. (Tr. 367).

#### 2. *State Agency Medical Consultants*

On October 8, 2022, W. Scott Bolz, M.D., a state agency medical consultant, opined that Ms. Lepley could perform work at the medium exertional level and could sit, stand, or walk for six hours in an eight-hour workday, but that she could only occasionally climb ladders, ropes, and scaffolds. (Tr. 440-41). On January 30, 2023, Dr. Gerald Klyop opined on reconsideration that Ms. Lepley should never climb ladders, ropes, or scaffolds; that she should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation; and that she should avoid all exposure

to hazards. (Tr. 460).

The ALJ found that the opinions of the state agency medical consultants were not persuasive because they did not fully account for Ms. Lepley's knee pain and swelling or the impact of issues that Ms. Lepley had in her upper extremities. (Tr. 367).

### D. **Relevant Medical Evidence**[1]

On July 18, 2019, prior to the alleged onset date, Ms. Lepley underwent a right knee arthroscopy to treat unremitting knee pain and swelling after nonsurgical treatment failed to improve her condition. (Tr. 1271).

On August 19, 2020, prior to the alleged onset date, Ms. Lepley saw an orthopedic specialist, complaining of right knee pain, which she said caused difficulty in using stairs and prevented her from walking long distances. (Tr. 665). She reported that the onset of her knee pain had been gradual, and that physical activity and movement aggravated her pain. *Id*. It was noted that she had a history of pseudogout. *Id*. On examination, Ms. Lepley had swelling, effusion, and bony crepitus in her right knee. (Tr. 667-68). She also displayed instability and an abnormal range of motion. (Tr. 667). Her gait was described as both normal and abnormal. *Id*. She was given a knee brace and a prescription for physical therapy, and was instructed to ice and elevate her knee. (Tr. 668).

Ms. Lepley had a follow-up visit on February 8, 2021, several months before her alleged onset date. (Tr. 669). She reported that her pain had worsened and that it was worse in her right knee than her left. *Id*. She also reported grinding in both knees when she bent. *Id*. On examination, Ms. Lepley had pain, swelling, effusion, bony crepitus in both knees, positive Valgus and Varus stress tests, and a positive McMurray test. (Tr. 672). She also displayed a normal gait and station

---

[1] During the administrative proceedings, Ms. Lepley alleged that she was disabled as a result of both physical and mental conditions. In this proceeding, she challenges the ALJ's analysis only with respect to her knee conditions. I therefore summarize the evidence relating only to her knees.

5

with a reduced range of motion. *Id*. An x-ray of both knees revealed right patellofemoral osteoarthrosis with lateral subluxation; severe chondrocalcinosis, greater in her right knee than her left; small right knee effusion; and no acute osseous pathology in her left knee. (Tr. 674). She was instructed to ice and elevate her knees and given information regarding a total knee replacement surgery. (Tr. 673).

Records reflect that Ms. Lepley did not see a doctor again for her knee pain until July 2023. On July 3, 2023, she presented to an orthopedist, complaining of right knee pain, which she reported was worsening. (Tr. 1288). She said that she experienced popping and cracking when she bent down and that she was having issues using stairs due to her right knee. *Id*. She also reported that she felt pulling in the back of the knee and a stabbing feeling when walking. *Id.* On examination, Ms. Lepley had pain, swelling, effusion, and bony crepitus in her right knee. (Tr. 1290). She also displayed an abnormal range of motion and instability. *Id*. X-rays of both knees showed bilateral chondrocalcinosis, greater in her right knee than her left; dorsal femoral condyle level right synovial calcification; right patellofemoral osteoarthrosis; and knee effusion. (Tr. 1263). Treatment notes are inconsistent regarding Ms. Lepley's gait, stating both that it was normal and that she walked with a slight limp. (Tr. 1288, 1290). After discussion, Ms. Lepley decided to proceed with a total knee arthroplasty. (Tr. 1288).

On various occasions during the relevant period, Ms. Lepley's gait, station, muscle strength, and/or range of motion are described as normal. (Tr. 733, 955, 1148-49, 1161, 1165, 1171, 1181, 1189, 1191).

### IV. THE ALJ'S DECISION

The ALJ first determined that Ms. Lepley met the insured status requirements of the Social Security Act through June 30, 2025. (Tr. 358). The ALJ further determined that Ms. Lepley had not been engaged in any gainful activity since June 9, 2021, the alleged onset date of her disability.

6

*Id.*

The ALJ next determined that Ms. Lepley had the following severe impairments: seizure disorder; narcolepsy; right shoulder AC degenerative joint disease; right carpal tunnel syndrome; tremor; asthma; winged scapula; Crohn's disease; pseudogout, bilateral knees; status post right knee surgery; generalized anxiety disorder; major depressive disorder; and bipolar disorder. (Tr. 358-59). The ALJ found, however, that none of Ms. Lepley's severe impairments, whether considered singly or in combination, met or medically equaled the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 360).

The ALJ next determined that Ms. Lepley had the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with certain restrictions. Specifically, the claimant can bilaterally frequently reach in all directions and frequently handle and finger; she can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds; she can frequently balance and stoop, and can occasionally kneel, crouch, and crawl; she must avoid exposure to unprotected heights and hazardous machinery; she must avoid concentrated exposure to humidity, extreme heat or cold, dust, odors, fumes, and pulmonary irritants; she can perform simple routine tasks and make simple work related decisions; she can have frequent interactions with supervisors, coworkers, and the general public; and, she can tolerate few changes in a routine work setting.

(Tr. 362-63).

The ALJ next found that Ms. Lepley was unable to perform any past relevant work. (Tr. 368). However, the ALJ also found that Ms. Lepley could perform jobs that exist in significant numbers in the national economy, including work as an order clerk, weight tester, or charge account clerk. (Tr. 368-69). Accordingly, the ALJ determined that Ms. Lepley was not disabled. (Tr. 370).

V.  **LAW & ANALYSIS**

    A.  <u>Standard of Review</u>

"After the Appeals Council reviews the ALJ's decision, the determination of the council

becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 Fed. Appx. 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)); *see also* 42 U.S.C. § 405(g).

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quotation omitted). The standard for "substantial evidence" is "not high." *Id*. While it requires "more than a mere scintilla," "[i]t means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation omitted).

In addition to considering whether substantial evidence supports the Commissioner's decision, the Court must determine whether the Commissioner applied proper legal standards. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp.

8

2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)) (alteration in original).

B. **Standard for Disability**

To establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315, 404.1505(a). A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.[2]

Consideration of disability claims follows a five-step review process. 20 C.F.R. §404.1520. First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education, or work

---

[2] The DIB and SSI regulations cited herein are generally identical. Accordingly, for convenience, in some instances, citations to the DIB and SSI regulations regarding disability determinations will be made to the DIB regulations found at 20 C.F.R. § 404.1501 *et seq*. The analogous SSI regulations are found at 20 C.F.R. § 416.901 *et seq*., corresponding to the last two digits of the DIB cite (*e.g.*, 20 C.F.R. § 404.1520 corresponds with 20 C.F.R. § 416.920).

experience. *See* 20 C.F.R. §§ 404.1520(d) and 416.920(d).

Before considering Step Four, the ALJ must determine the claimant's residual functional capacity, *i.e.*, the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. § 404.1520(e) and 416.930(e). At the fourth step, if the claimant's impairment or combination of impairments does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, the claimant is not disabled if other work exists in the national economy that the claimant can perform. 20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g). *See Abbott*, 905 F.2d at 923.

C. **Analysis**

Ms. Lepley argues that the ALJ erred in formulating her RFC. In particular, Ms. Lepley argues that the ALJ should have adopted limitations regarding her need to alternate positions and her difficulty in sitting for long periods as a result of her knees. Ms. Lepley's argument is not well-taken.

"A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner." *Golden v. Berryhill*, No. 1:18CV00636, 2018 WL 7079506, at *17 (N.D. Ohio Dec. 12, 2018), *report and recommendation adopted sub nom*, 2019 WL 415250 (N.D. Ohio Feb. 1, 2019). The ALJ is "charged with the responsibility of determining the RFC based on [the ALJ's] evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). "[T]he ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Golden*, 2018 WL 7079506 at *17. However, "[i]t is plaintiff's burden to prove the severity of her impairments, and to provide

10

evidence establishing her RFC." *Lumpkin v. Comm'r of Soc. Sec.*, No. 1:20-CV-1849, 2021 WL 4987607, at *3 (N.D. Ohio Oct. 27, 2021).

Here, the ALJ found that Ms. Lepley's severe impairments included both pseudogout in both knees and status post right knee surgery. (Tr. 359-60). In formulating Ms. Lepley's RFC, the ALJ then evaluated her knee conditions as follows:

> The claimant sought treatment for right knee pain beginning in about 2019 and underwent a meniscectomy in July 2019 (14F:9, 46). The record indicates that she has had multiple knee scopes to address her knee condition (see 11F:1). She was diagnosed with pseudogout of the knees around that time with other records also noting calcium pyrophosphate deposition disease (see 12F:3). Thereafter she continued to present periodically for ongoing knee pain with difficulty navigating stairs (14F:30, 34, 42). X-rays in February 2021 revealed right patellofemoral osteoarthrosis with lateral subluxation and severe chondrocalcinosis (1F:10). An orthopedic examination at that time also noted positive findings with the valgus and varus stress tests and McMurray test as well as bilateral swelling and effusion, bony crepitus, instability, and decreased range of motion (14F:30-33). She was advised on conservative therapies, including over-the-counter Tylenol, NSAIDs, ice, and elevation.
>
> There is little evidence, if any, pertaining to the knee pain for about two years thereafter. Recently, however, in July 2023, she returned to her orthopedist reporting that her pain had continued but recently worsened, resulting in greater pain and difficulty with walking, navigating stairs, and bending (14F:26). The findings remained essentially unchanged when compared to the prior exam two years earlier (14F:28). Despite the claimant's reports as well as positive examination findings, her gait is consistently described as normal. Nevertheless, the consistent findings spanning several years support limiting the claimant's ability to stand and walk for prolonged periods. However, there is nothing in the medical record or objective findings to support the claimant's allegation that she must alternate her position every few minutes or any support for difficulty with sitting. The claimant's ability to perform various postural tasks is also restricted due to the condition of her knees, particularly with kneeling, crouching and crawling.

(Tr. 363-64).

Ms. Lepley challenges on several grounds the ALJ's findings regarding her need to alternate positions or her difficulty sitting. First, she argues that the ALJ misstated the record when he found that she consistently presented with a normal gait. As Ms. Lepley notes, several treating

11

records describe her as presenting with a limp or an otherwise abnormal gait. (Tr. 1288, 1316, 1332, 1341, 1345). The Commissioner responds that many of those records predated the relevant period by several years. That is true. However, the Sixth Circuit has refused to "endorse the position that all evidence or medical records predating the alleged date of the onset of disability . . . are necessarily irrelevant or automatically barred from consideration . . . ." *Deboard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 414 (6th Cir. 2006). Moreover, treatment notes from July 3, 2023, after the alleged onset date, also indicate that Ms. Lepley presented with a slight limp. (Tr. 1288). Thus, to the extent the ALJ found that Ms. Lepley consistently displayed a normal gait, his finding was inaccurate.

However, the fact that an ALJ misstated a piece of medical evidence does not necessarily require remand so long as the ALJ's conclusion, as a whole, is supported by substantial evidence. *See Bragg v. Comm'r of Soc. Sec.*, No. 1:20-cv-378, 2020 WL 7769720, at *13 (N.D. Ohio Dec. 30, 2020) ("One misstated example, in light of the ALJ's extensive summary of other record evidence and the existence of other examples of how [the medical source's] opinion was inconsistent with objective medical evidence, does not render the ALJ's finding unsupported by substantial evidence – even if other evidence or a preponderance of the evidence could have supported a different conclusion."); *Arthur v. Comm'r of Soc. Sec.*, No. 1:21-CV-00659-JRA, 2022 WL 566546, at *5 (N.D. Ohio Jan. 21, 2022) (holding that substantial evidence supported ALJ's findings regarding the impact of claimant's headaches despite fact that ALJ misstated the frequency of claimant's headaches because sufficient evidence supported the ALJ's conclusion despite the misstatement), *report and recommendation adopted*, 2022 WL 562453 (N.D. Ohio Feb. 24, 2022).

Here, while not *all* records showed that Ms. Lepley had a normal gait, the vast majority of records postdating her alleged onset date did. (Tr. 733, 955, 1139, 1148-49, 1161, 1165, 1171,

1181, 1189, 1191).[3] Ms. Lepley argues that many of these records were created when she was being treated for other, unrelated conditions, including sleep problems, seizures, and gastrointestinal issues. She asserts that the treating physicians were not focused on her knee problems and did not discuss them with her. However, while it is true that many of her treatment notes arose from doctors' visits regarding other problems, there is nothing in the record suggesting that those notes inaccurately describe Ms. Lepley's gait at the time of treatment. Regardless, despite the ALJ's findings regarding Ms. Lepley's gait, he adopted limitations regarding her ability to stand and walk. (Tr. 364). The ALJ's conclusion with respect to Ms. Lepley's mobility is supported by substantial evidence, even if the ALJ's statement that she consistently presented with a normal gait was not entirely accurate.

Ms. Lepley next alleges that the ALJ "fail[ed] to fully appreciate the medical and other evidence in the record" regarding her knee problems, and cites to records showing that she had swelling, effusion, abnormal range of motion, instability, and positive stress tests. (ECF No. 10, PageID # 1432). Ms. Lepley also notes that her physician recommended a total knee replacement in July 2023, which, she argues, shows that the ALJ should have adopted greater limitations.

Ms. Lepley's argument is again unavailing. The ALJ expressly noted that treatment records showed problems with her knees, including swelling, effusion, bony crepitus, instability, decreased range of motion, and positive stress tests. (Tr. 364). The ALJ also specifically found that "the consistent findings spanning several years support limiting the claimant's ability to stand and walk for prolonged periods." (Tr. 364). While Ms. Lepley believes that the ALJ should have adopted additional limitations as well, she does not cite to any treatment records, or an opinion from any acceptable medical source, demonstrating that she also needed to alternate positions

---

[3] It also appears that some of the records predating Ms. Lepley's alleged onset date may have related to a separate ankle injury. (Tr. 1316, 1332, 1345). However, the Commissioner does not argue that those records are irrelevant on that basis, and I will assume that they are relevant to whether Ms. Lepley's knee problems caused issues with her gait.

13

frequently and could not sit for extended periods. Regardless, "the Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *see also Anderson v. Comm'r of Soc. Sec.*, No. 1:21-CV-1471, 2022 WL 4545188, at *2 (N.D. Ohio Sept. 29, 2022) ("it is also well-established that as long as the ALJ cites substantial, legitimate evidence to support the conclusion reached, the reviewing court may not second-guess that decision"). Substantial evidence supports the ALJ's decision to omit limitations regarding Ms. Lepley's need to change positions or her ability to sit for extended periods.

Finally, Ms. Lepley argues that the ALJ insufficiently credited her own testimony that she needs to change positions every 15 minutes and cannot sit for more than ten minutes at a time. The applicable regulation governing the SSA's evaluation of a claimant's symptom reports, Social Security Ruling ("SSR") 16-3p, provides that the SSA will "consider an individual's statements about the intensity, persistence, and limiting effects of symptoms" and "will evaluate whether the statements are consistent with objective medical evidence and the other evidence." 2017 WL 5180304, at *6 (Oct. 25, 2017).

SSR 16-3p identifies seven factors that the SSA will consider in evaluating an individual's symptoms: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate symptoms; (4) the type, dosage, effectiveness, and side effects of any medication; (5) treatment an individual receives or has received other than medication; (6) any measures other than treatment an individual uses or has used; and (7) any other factors concerning the claimant's functional limitations and restrictions. *Id*. at *7-8. "The ALJ need not analyze all seven factors but should show that she considered the relevant evidence." *Phillips v. Comm'r of Soc. Sec. Admin.*, No. 3:22-CV-01144-JGC, 2023 WL 4078204, at *8 (N.D.

14

Ohio Apr. 4, 2023), *report and recommendation adopted*, 2023 WL 5602726 (N.D. Ohio Aug. 30, 2023). Notably, "[a] plaintiff does not demonstrate a violation of SSR 16-3p simply by reiterating the same subjective symptoms she believes should have been credited by the ALJ, as an ALJ is not required to accept a claimant's subjective complaints." *Zingale v. Kijakazi*, No. 1:20-cv-02197, 2022 WL 824148, at *8 (N.D. Ohio Mar. 18, 2022) (citing *Jones*, 336 F.3d at 476). Moreover, "[i]t is for the administrative law judge, not the reviewing court, to judge the consistency of a claimant's statements." *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 171 (6th Cir. 2020).

The ALJ properly considered the SSR 16-3p factors here, including Ms. Lepley's reported pain, aggravating factors, treatment records, and her two-year gap in treatment, before concluding that nothing in the record supported her allegation that she needed to alternate positions every 15 minutes or had difficulty sitting for extended periods. (Tr. 364). Substantial evidence supports the ALJ's conclusion. *See Young v. Comm'r of Soc. Sec. Admin.*, No. 5:21-cv-00761, 2022 WL 17546359, at *6 (N.D. Ohio Dec. 9, 2022) (holding that ALJ complied with SSR 16-3p where ALJ evaluated the intensity and persistence of claimant's symptoms and determined extent to which those symptoms limited claimant's ability to perform work activities); *Myers v. Comm'r of Soc. Sec. Admin.*, No. 1:21-CV-02381-SL, 2022 WL 18636593, at *10-11 (N.D. Ohio Dec. 2, 2022) (holding that ALJ complied with SSR 16-3p where ALJ considered claimant's subjective complaints of pain but did not find pain disabling), *report and recommendation adopted*, 2023 WL 369435 (N.D. Ohio Jan. 24, 2023).

In sum, the ALJ evaluated Ms. Lepley's knee problems in accordance with governing regulations. The ALJ acknowledged evidence that limited Ms. Lepley's ability to function, while also finding that her testimony regarding her need to change positions and her ability to sit was not entirely consistent with the overall evidence. Substantial evidence supports the ALJ's conclusion. To the extent Ms. Lepley believes other evidence in the record should have supported

15

a more restrictive RFC, it is not a reviewing court's job to reweigh the evidence. *See Jones*, 336 F.3d at 477. I therefore recommend that that the Court affirm the Commissioner's decision.

## VI. RECOMMENDATION

Based on the foregoing, I RECOMMEND that the Court AFFIRM the Commissioner's final decision.

Dated: May 14, 2025

/s Jennifer Dowdell Armstrong
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

## VII. NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and

recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).